**CALHOUN COUNTY CANAL CO.**

v.

**RICHMAN et al.**

**No. 12544.**

Court of Civil Appeals of Texas.

San Antonio.

Jan. 27, 1954.

Rehearing Denied Feb. 24, 1954.

Vinson, Elkins & Weems, Houston, R. Richard Roberts, Houston, Hartzog & Barton, Port Lavaca, Robert E. Morse, Jr., Houston, for appellant.

Masterson, Williams & Smith, Angleton, Wm. S. Fly, Victoria, Leon C. Levy, Port Lavaca, Massey, Hodges, Moore & Gates, Columbus, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted in the District Court of Calhoun County, by Pat Richman and K. L. Huddleston, doing business as Richman and Huddleston, and one Van V. Adams, against Calhoun County Canal Company, a corporation, organized and existing under the laws of Texas for the purpose of the appropriation and distribution of water for irrigation purposes, seeking to recover damages to their 1948 rice crop, caused by the alleged failure of defendant to furnish irrigation water in accordance with a contract entered into by the parties. The cause was submitted to the jury on forty-five special issues, some of which were answered favorably to the plaintiff and some favorably to the defendant, and based upon such answers the trial court entered judgment in favor of Van Adams in the sum of $6,478.83, and in favor of Pat Richman and K. D. Huddleston, jointly, in the sum of $4,986.22, from which judgment the Calhoun County Canal Company has prosecuted this appeal.

The appellees Richman and Huddleston are rice farmers. They had signed a contract with appellant to furnish them water for the irrigation of their rice crop for the year 1948. Van V. Adams was a tenant of Richman and Huddleston. The grounds upon which appellees sought recovery against appellant were:

(a) Discrimination by appellant, a quasi-public corporation, against appellees;

(b) Negligence and breach of duty by appellant to appellees in failing to begin the necessary work and cuts prior to the watering season (beginning in May, 1948), for diverting water from the Guadalupe River, in the Edward Ferguson Survey, through Hogg and Goff Bayous, to its pumping plants;

(c) Negligence and breach of duty by appellant to appellees in the manner in which it conducted its operations, after beginning same, in completing the necessary work and cuts for bringing water from the diversion point on the Guadalupe River, in the Edward Ferguson Survey, through Hogg and Goff Bayous, to its pumping plants;

(d) Negligence and breach of duty by appellant to appellees in contracting to supply irrigation water for 19,079 acres, considering appellant's pumping capacity and all other facilities at its command in 1948.

A rather full statement of the facts would here be helpful. Appellant had a pump on Goff Bayou, from which it secured the principal portion of the water furnished to the rice farmers. In 1948, appellant had contracted to furnish water to some 19,000 acres of land to be planted in rice. The source of appellant's water was the Guadalupe River, the water of which had been diverted to Mission Lake. The water in Mission Lake would be pushed by tidal action up Goff Bayou to the pumping plants of appellant. When the river would get low, due to drought, the salt water from the sea would be pushed, by tidal action, through Mission Lake to Goff Bayou and cause the water, pumped by appellant, to have a greater salt content than was regarded by many of the farmers as being safe for use upon growing rice crops. When the water would contain salt to the danger point, some of the farmers would continue to use it while others would refuse to do so, and thus when fresh water became available the demand would be so great that appellant could not possibly supply the demand.

Appellant had a permit from the State Board of Water Engineers to secure water further up stream by making a cut from the Guadalupe River into Hogg Bayou, and then another cut from Hogg to Goff Bayou, thus allowing the water to reach appellant's pump without first flowing into Mission Lake. This permit was secured in 1945, but no effort was made to make these cuts until the year 1948, although the amount of acreage contracted to be irrigated by appellant had been greatly increased. The jury, by their answers to the issues submitted, found that appellant, during periods of shortage of water, failed to make available in the canal serving ap-

pellees' land, at the water gates thereof, appellees' pro rata share of the available water for use on their 83 acres of Zenith rice, in 1948; that *on account of* such failure the yield per acre was reduced on said 83 acres of Zenith rice, and that *on account of* such failure the rice actually produced on the 83 acres was of inferior quality; and further that *on account of* such failure the marketing of appellees' Zenith rice was delayed.

The jury further found that during periods of shortage of water appellant failed to make available in the canal serving appellees' land, at the water gate thereof, appellees' pro rata share of the available water for use on 185 acres of Bluebonnet rice in the year 1948. That *on account of* such failure the yield per acre was reduced, and that the rice produced was of an inferior quality, and, further, that *on account of* such failure the marketing of appellees' Bluebonnet rice was delayed.

The jury further found that unauthorized persons, not under control of appellant Canal Company, interfered with the flow and distribution of water, by meddling with water boxes and check gates on appellant's canal system, during the 1948 irrigation season, and that such meddling was a proximate cause of the damage to appellees' rice crop.

The jury further found that in 1948 the quantity of water in the canals serving plaintiffs' land, at the water gates thereof, when added to the annual rainfall, was not sufficient to reasonably irrigate appellees' rice crop.

The jury further found that, considering appellant's pumping capacity and all other facilities at its command in 1948, the appellant was not negligent in contracting to supply water to irrigate 19,079 acres of land.

The jury further found that appellant was negligent in failing to begin the necessary work and cuts prior to May, 1948, for diverting water from the Guadalupe River, in the Edward Ferguson Survey,

through Hogg and Goff Bayous to its pumping plants. That such negligence was a proximate cause of the insufficient water supply, and further that appellant was negligent in the manner in which it conducted its operations, after beginning same, in completing the necessary work and cuts for bringing water from the diversion point on the Guadalupe River in the Edward Ferguson Survey, through Hogg and Goff Bayous to its pumping plants, and, further, that *on account of* the insufficient water supply the marketing of plaintiffs' Zenith rice was delayed. They further found that *on account of* the insufficient water supply the yield per acre on the 185 acres of Bluebonnet rice was reduced; that *on account of* the insufficient water supply the rice actually produced on the 185 acres was of an inferior quality, and that its marketing was delayed.

The jury further found that the failure of the rice farmers on the canal system of appellant to accept delivery of water of an increased salt content, caused a subsequent abnormally high demand for delivery of fresh water to the rice fields on the canal system, when the next fresh water became available, and that the same was *a proximate cause* of the damage to the rice crop of appellees. They also found that the weather conditions which existed during the irrigation season of 1948 were *a proximate cause* of the damage to the rice crop of appellees.

The jury found that 947 additional barrels of rice would have been produced from the 83 acres in 1948, had the same not been damaged by any of the acts or omissions of appellant, and that 370 additional barrels of rice would have been produced from the 185 acres in 1948, had the same not been damaged by the acts or omissions of appellant.

The jury further found that the additional cost per barrel of producing, harvesting, hauling, drying and selling the additional Zenith rice, would have been $1.80 per barrel, and that the same was true of the Bluebonnet rice.

The jury found that if the Zenith rice had been ready for marketing at the time it should have been ready, its fair, reasonable cash market value would have been $8 per barrel; and that such value of the Bluebonnet rice would have been $9.91 per barrel.

The judgment, as hereinbefore stated, was based upon these jury findings.

Appellant's first contention is that the court erred in entering judgment for appellees and in failing to enter judgment for appellant, for the reason that there was no pleading, proof or finding of any act or omission on the part of appellant which constituted actionable negligence, appellant's liability being limited by the contract plead and proved by appellees to injury or loss resulting from such negligence.

Appellees Richman and Huddleston had signed a contract with appellant and having brought this suit for a breach of that contract are bound by its terms. Van V. Adams, being a lessee of Richman and Huddleston, is also bound by the terms of the contract.

Section Ninth of the contract provides, as follows:

"Both parties hereto being fully advised and having considered that the supply of water for irrigation by means of pumps and canals is hazardous and uncertain, and First Party having declined to contract to perform the service herein at the compensation herein fixed without these limitations, it is agreed that in case of any accident to the machinery or canal of First Party, it shall not be held for any damage resulting from its failure or delay in furnishing water except that it shall use reasonable diligence to repair the machinery and canal with reasonable dispatch, and should such accident so injure the machinery, canal or plant as to cause a practical suspension of operations, First Party shall not be held liable for any damage occasioned thereby. First Party shall not be liable for damages resulting from shortage of water in the Guadalupe River and Smuggler's Bayou, or the pollution thereof, or salt water therein, which river and bayou are the source of supply in contemplation of parties hereto, or from drought over the lands watered by the canal; and in case of shortage of water from drought, accident or other cause, the water to be distributed shall be divided among all patrons pro rata according to the amount they may be entitled to (estimated on all acreage in cultivation) to the end that all suffer alike and preference be given to none, and First Party shall not be held liable for injury to or failure of the rice crop therein mentioned, if it shall exercise reasonable diligence, with the facilities at its command and the capacity of its pumping plant and the length and size of its canals considered to furnish water to Second Party and its other patrons in such quantity as is practicable and without discrimination, or for injury or loss resulting from any cause not attributable to its negligence."

Appellees, having brought this suit for a breach of the contract and not having sought to reform or set aside any of its provisions, are not in a position to challenge any provisions of the contract, for they have agreed, in effect, that appellant is only to be held liable for its negligent or willful acts.

Article 7557, Vernon's Tex.Civ.Stats., provides:

"In case of shortage of water from drouth, accident or other cause, all waters to be distributed shall be divided among all customers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and preference be given none."

Such statute should not be construed as making appellant an insurer of appellees' right to their pro rata share of the water, but only that it will use due diligence to see that appellees receive their

pro rata share of the available water. If appellant did not willfully or negligently fail to furnish appellees their pro rata share of the available water, it would not be liable either under the statute or under the terms of the contract.

■ The trial court erred in not submitting to the jury the question of the negligence of appellant in not furnishing appellees their pro rata share of the water, and whether such negligence was a proximate cause of damage to appellees' rice crop. Especially is this true in the light of the other findings of the jury. In answer to Issues Nos. 9 and 10, the jury found that the meddling of unauthorized persons with the water boxes and check gates of appellant was a proximate cause of the damage to appellees' rice crop.

By their answers to Issues Nos. 27 and 28, the jury found that the abnormal demand for water caused by the failure of rice farmers to use water of a high salt content when it was available, was a proximate cause of appellees' injury. By their answer to Issue No. 36, they found that the weather conditions which existed during the irrigating season of 1948 were a proximate cause of appellees' damage. In the face of these findings, appellees were not entitled to a judgment against appellant in the absence of a finding that it had failed to use due diligence to furnish appellees their pro rata share of the available water, and that such failure was a proximate cause of the injury to their rice crop. Appellant excepted to the charge, in effect, for the failure to submit these issues.

■ Appellant next contends that the trial court erred in holding it liable for negligence in delaying the beginning of, and in the manner of conducting, work and cuts for bringing water from the Guadalupe River through Hogg and Goff Bayous to its pumping plants. Appellant had been granted a permit by the State Board of Water Engineers of two methods of diversion of water from the Guadalupe River, and it was authorized to use either one or both of these methods. In 1948, when the contract sued upon was signed, only one method was in use. There was in existence a cut from the Guadalupe River to Mission Lake, and thus waters from the river were dumped into the lake, and by tidal action driven up Goff Bayou (sometimes referred to as Smugglers Bayou) to appellant's pumping plants. The other method consisted of making a cut much farther up stream on Ferguson Survey across to Hogg Bayou, and another cut from Hogg Bayou to Goff Bayou and allow the water from the Guadalupe to thus reach appellant's pumps. These cuts had not been made at the time of the signing of the water contract and there was no agreement in the contract that the cuts would be made; the contract was made subject only to the facilities at appellant's command and the capacity of its pumping plant and the length and size of its canals. The State Board of Water Engineers had given appellant three years from and after July 31, 1947, within which to complete these cuts and to establish this second method of diverting water. Appellant had not obligated itself in any way to complete these cuts during the year 1948. The jury, in answer to Issue No. 14, found that, considering appellant's pumping capacity and all other facilities at its command in 1948, it was not negligent in contracting to supply water to irrigate 19,079 acres of land.

Under such circumstances, the appellant owed no duty to appellees to complete these cuts during the year 1948, and the court erred in basing the judgment in part upon the supposed negligence of appellant in not doing so.

Accordingly, the judgment of the trial court is reversed and the cause remanded.